KING, APPELLANT, *v.* MORRISON MOTOR FREIGHT LINES,
APPELLEE.

(No. 732—Decided October 13, 1959.)

*Messrs. Young & Young,* for appellant.
*Messrs. Freeman & Freeman,* for appellee.

FESS, J. This is an appeal on questions of law from a
judgment entered upon a verdict for the defendant rendered up-
on direction of the court at the conclusion of plaintiff's opening
statement.

From the opening statement it appears that a truck of the
defendant, hauling a number of barrels or drums of chlorosul-
phonic acid, came into collision with a railroad train, as a result
of which a number of such drums were scattered over and ad-
jacent to the railroad crossing. Plaintiff's employer, Kaiser
Chevrolet, was engaged by the defendant to remove the result-
ing debris. Chlorosulphonic acid is a highly dangerous sub-
stance.

In his petition (recited in the opening statement), plaintiff
charges the defendant with negligence in misrepresenting to
plaintiff and his employer the nature of the contents of the
drums and with negligence in failing to furnish plaintiff with
sufficient protective clothing and other protective devices. He
alleges further that, although defendant well knew that said
acid is extremely dangerous to handle, plaintiff was ignorant of
the nature thereof and relied upon the representations of the
defendant that it was merely storage-battery acid, and that, as
a result of such misrepresentations and the carelessness of the

defendant in failing to furnish plaintiff with protective clothing and devices, one of the barrels, while apparently sound, had been eaten by the acid to such an extent that in being moved it spilled a quantity of the acid into the boot worn by plaintiff, severely and painfully injuring the plaintiff to his damage in the sum of $20,000.

1. Liability in general with respect to dangerous substances.

It appears from the opening statement that chlorosulphonic acid is a highly dangerous substance. The mere fact that an instrumentality or substance may become dangerous to others does not constitute its possessor an insurer against injury that may result therefrom, but one who causes or authorizes the use of a dangerous article in a negligent manner, or under such circumstances that he has reason to know it is likely to produce injury, may be held responsible for the natural and probable consequences of his act to any person so injured without the latter's fault. 38 American Jurisprudence, 743, Section 85. And one who has in his possession or under his control a substance exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury being done thereby. *Ibid.*

2. Relinquishment of control.

In the instant case, the defendant relinquished control of the substance to plaintiff's employer. A change in control normally operates to exonerate the person relinquishing control from liability so far, at least, as the danger from the instrumentality depends upon the subsequent conduct of the person to whom it is surrendered. 38 American Jurisprudence, 745, Section 86. On the other hand, one who has created an instrumentality having features rendering it dangerous which are unknown except to him can not escape liability by surrendering control shortly prior to an accident. 38 American Jurisprudence, 746, Section 86.

3. Duty to warn.

"To a certain extent, both the one who maintains an instrumentality and the one who comes in contact therewith are under duty to investigate for the purpose of determining the perils which reasonably may be anticipated from the use or operation of the instrumentality. To some degree, moreover,

persons who own or maintain dangerous instrumentalities have a right to rely upon others imperiled thereby to take customary measures to avoid injury. However, a person who maintains an instrumentality which he knows, or which, in the exercise of reasonable prudence, he should ascertain, to be dangerous, cannot rely upon more than the normal and usual exercise of faculties by persons who come in contact therewith, to avoid injury. An affirmative, although not an absolute duty, is imposed upon him, not only of discovering hidden perils, but of preventing injuries to persons to whom he is obligated to use due care, by giving warnings of danger, erecting sufficient guards, and installing equipment calculated to reduce the peril. If the owner of a thing which is capable in its nature of doing injury to persons leaves it exposed and unguarded in a public place, and a person is injured as a natural and probable consequence without fault on his own part, the owner is responsible.'' 38 American Jurisprudence, 749, Section 90.

In the main, the foregoing principles have been followed in Ohio. In *Davis* v. *Charles Shutrump & Sons Co.*, 140 Ohio St., 89, 42 N. E. (2d), 663, it was held that, where the premises upon which construction work is to be performed by a contractor remains under the control of the principal employer while the work is in the course of performance, a servant of the contractor is an invitee and as such entitled to recover from the principal employer for any injury which he may sustain by reason of the abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition. It will be noted that inferentially a duty is imposed upon the owner to give notice of a hazardous condition. See, also, *Hozian, an Infant*, v. *Crucible Steel Casting Co.*, 132 Ohio St., 453, 9 N. E. (2d), 143, 112 A. L. R., 333. In *Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St., 538, 62 N. E. (2d), 305, it was held that an employee of an independent contractor, while engaged in the erection of a building upon premises the possession and control of which are retained by the owner, is an invitee to whom the owner owes the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation and to inform the invitee

of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee.

It will thus be noted that in Ohio a duty is imposed upon an owner to inform his invitee of hazardous conditions of premises and of activities thereon unknown by and not obvious to the invitee. Although these principles relate primarily to the owner of premises, in our opinion, the same principles apply to one having the care and custody of dangerous instrumentalities or substances. See 65 Corpus Juris Secundum, 560, Negligence, Section 67, citing authorities in support of the proposition that a person who possesses a dangerous article must exercise diligence for the safety of those likely to be injured by a probable use of it.

In support of the judgment below, defendant cites *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St., 103, 113 N. E. (2d), 629, and *Schwarz* v. *General Electric Realty Corp.*, 163 Ohio St., 354, 126 N. E. (2d), 906. In the *Wellman case* it was held that one who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance. But it is to be noted that in that case by the very nature of the work the independent contractor, through its foreman and the welder, the plaintiff's immediate superior, was fully aware of the hazard confronted, and that it was the independent contractor's duty to warn and protect its employees and no such duty devolved upon the owner.

In the *Schwarz case* it was held that, where the owner of premises employs an independent contractor to do work thereon, is not in control of the work area, does not participate in the work, and gives notice to the contractor or to those in charge of the work of the potential danger of contact with a high-tension electric line maintained on the premises, such owner is not legally obligated to give notice of such danger to the individual employees of such independent contractor who may be assigned by such contractor to unload steel beams at a site underneath such high-tension line. That case is authority for the proposition that notice of potential danger given to an independent contractor or to those in charge of the work is suf-

ficient without giving notice of such danger to an individual employee of such independent contractor. But in the instant case it is averred that the notice was insufficient to warn the plaintiff's employer of the highly dangerous nature of the substance. See *Creasy* v. *Ohio Power Co.*, 248 F. (2d), 745.

It is to be observed that the *Hozian* and *Bosjnak cases* are referred to in the *Wellman case*, and that the principle enunciated in the *Bosjnak case* that a duty is imposed upon an owner of premises to advise an employee of an independent contractor of hazards unknown by and not obvious to such employee was neither overruled nor modified in the *Wellman* and *Schwarz cases*, but the *Bosjnak case* was distinguished and inferentially affirmed.

The *Wellman* and *Schwarz cases* relied upon by the defendant in support of the judgment are therefore to be distinguished from the circumstances presented in the instant case, and, in our opinion, the principle announced in the *Bosjnak, Hozian* and *Davis cases* applies.

It is generally agreed that a trial court should exercise caution in directing a verdict on the opening statement of counsel. *Cornell* v. *Morrison*, 87 Ohio St., 215, 222, 100 N. E., 817; *Ellis* v. *Victor Electric Products, Inc.*, 85 Ohio App., 170, 88 N. E. (2d), 275. As in the case of ruling upon a demurrer to a petition, the trial court must interpret the statement most favorably to the plaintiff and give it the most liberal consruction possible in favor of the plaintiff. *Neckel* v. *Fox*, 110 Ohio St., 150, 143 N. E., 389; *Wainscott* v. *Young*, 74 Ohio App., 463, 59 N. E. (2d), 609.

Notwithstanding the somewhat awkward and inartificial language employed in the petition and opening statement, in the light of the foregoing authorities and under the rule of liberal construction, it is concluded that the opening statement states a cause of action against the defendant.

The judgment is reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

DEEDS and SMITH, JJ., concur.