MILLHOUSE, ADMX., APPELLANT, *v.* GENERAL TIRE AND RUBBER COMPANY, APPELLEE.

(No. 45165—Decided March 3, 1983.)

*Mr. David J. Elk,* for appellant.
*Mr. James Gowan,* for appellee.

CORRIGAN, J. The appellant, Tennie E. Millhouse, Administratrix of the Estate of Stanley Millhouse, appeals from the trial court's granting of a summary judgment for the appellee, General Tire and Rubber Company.

The appellant filed suit against the appellee on December 17, 1980, claiming that the appellee's negligence, breach of warranty, creation and maintenance of a nuisance and wanton misconduct had caused the death of Stanley Millhouse. Both parties agree that Mr. Millhouse died on February 8, 1979, from exposure to the toxic chemical Toluene Diisocyanate (hereinafter "TDI"). The appellant's decedent's death occurred while he was working for Mobile Wash, an independent contractor which was doing a job for the appellee at the time.

After the filing of the complaint, the appellee took the depositions of Mr. Conkey, the Vice President of Mobile Wash, and Robert Bielek, Millhouse's immediate supervisor at Mobile Wash. Conkey testified that the appellee had hired Mobile Wash to clean the tank car that Millhouse was working on when he died. Conkey stated that the appellee had notified him first by phone then by letter that the car contained TDI. Mobile Wash had been cleaning cars with TDI in them regularly for one year, so Conkey was aware of the dangers of TDI. He testified that whenever his company encountered a new chemical it was researched by people in its laboratory. If there were any questions after this, manufacturers and chemists familiar with the handling techniques would be contacted. Mobile Wash would then draft instructions that would go to the men working with the material. Conkey stated that he had drafted such instructions for Millhouse, and that Millhouse had worked with TDI prior to this job. He testified that the letters "TDI" were stenciled on the tank car on which Millhouse worked, and that a poison placard was on each side and end of the car.

Bielek and Conkey both testified that Mobile Wash had an established procedure for cleaning tank cars that con-

tained TDI. The worker was to wear a full wet suit, including a jacket, pants, rubber gloves and boots, a mask and a breathing motor which supplies air through a hose. Bielek stated that he was sure that he gave Millhouse instructions on the properties of TDI. He testified that TDI was the most toxic material the company worked with at that time, so there "was a lot of awareness about that particular tank car." He also testified that the company had been working with TDI regularly for one year prior to this incident. He stated that he was on the site, but observing a different car when the incident occurred. He was alerted to the problem by Millhouse's partner, and when he arrived Millhouse was unconscious in the tank. He was wearing boots and rubber pants, but no mask or independent breathing source. He did not have wristlets or a safety line attached to him as company procedures required.

After taking the depositions, the appellee filed a motion for summary judgment. The trial court granted the motion. In this appeal the appellant raises the following assignments of error:

"I. The trial court committed reversible error by concluding as a matter of law that the producer of an inherently dangerous chemical had no duty to adequately inform an employee of an independent contractor, or his supervisors, of the non-obvious danger.

"II. The trial court committed reversible error by concluding as a matter of law that an intervening cause could relieve appellee of its duty to warn of a non-obvious extreme inherent danger, which was the efficient cause of the injury.

"III. The trial court committed reversible error by ruling as a matter of law that an independent contractor's employee, unaware of the full extent of an intrinsic hazard, could be contributorily negligent.

"IV. The trial court committed reversible error in granting appellee's motion for summary judgment under Ohio Rule of Civil Procedure 56 because there were genuine issues of material fact upon which reasonable minds could differ."

I

In her first assignment of error, the appellant asserts that the trial court erred in granting the summary judgment since the appellee had a duty to inform Millhouse or his supervisors of the dangers in cleaning the tank car. There is no merit in this assignment.

In *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103, 108 [51 O.O. 27], the Supreme Court held:

"The rule of general acceptance is that where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor. * * *

"* * *

"Or, stating the matter a little differently, one who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance."

In *Schwarz* v. *General Electric Realty Corp.* (1955), 163 Ohio St. 354 [56 O.O. 319], the court held that the owner of premises must notify the independent contractor of potential hazards on the property. However, he is not legally obligated to give notice of such danger to each of the individual employees of the independent contractor.[1]

---

[1] The appellant argues that *King* v. *Morrison Motor Freight Lines* (1959), 111 Ohio App. 172 [14 O.O.2d 56], distinguishes *Wellman* and *Schwarz* and controls here. The

The case of *Evans* v. *Whirlpool Corp.* (1967), 10 Ohio St. 2d 240 [39 O.O.2d 372], is almost identical to the case before us. In *Evans* an employee of the city dump was injured when a chemical from a can dumped by Whirlpool went into his eyes. Whirlpool had been dumping the cans there for four years and at the beginning of these four years, Whirlpool notified the city dump that the cans were going to be deposited there and explained what the cans contained. The court in *Evans* held that because Whirlpool had notified the city, which was Whirlpool's independent contractor, the city's employee could not recover against Whirlpool.

In this case the depositions of the Vice-President of Mobile Wash and one of Mobile Wash's supervisors show that the appellee notified Mobile Wash that the tank car contained TDI and that Mobile Wash was very familiar with TDI's dangers. There is also uncontradicted evidence that the car had the letters "TDI" stencilled on it.[2] Since the appellee notified Mobile Wash that the car contained TDI, the trial court properly granted summary judgment.

Assignment of Error No. I is overruled.

## II and III

Assignments of Error Nos. II and III are both based on the assumption that we find merit in Assignment of Error No. I. Assignment of Error No. II argues that there was no intervening cause that prevented the appellee's liability, and Assignment of Error No. III asserts that the trial court erred in finding that Millhouse was contributorily negligent. Since we held in Assignment of Error No. I that the appellee had no duty to warn Millhouse that the tank car contained TDI and that the trial court properly granted summary judgment, these assignments are moot.

Assignments of Error Nos. II and III are overruled.

## IV

In this assignment the appellant asserts that summary judgment should not have been granted since there are genuine issues of fact. A summary judgment should be granted when, after looking at the evidence in the light most favorable to the nonmoving party, the moving party establishes that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Civ. R. 56(C). In this case the appellee filed two depositions of non-parties with its motion for summary judgment. The appellant's reply attached no other affidavits or depositions. The two depositions submitted by the appellee do not contradict each other as to the crucial facts. Both deponents testified that Mobile Wash knew that the tank car contained TDI and that both the vice president and Millhouse's supervisor knew of the dangers of TDI and the proper safety precautions that must be used when working around TDI. There is no material issue of fact in dispute. The trial court properly granted summary judgment.

The judgment is affirmed.

*Judgment affirmed.*

DAY, P.J., and BROGAN, J., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Eighth Appellate District.

---

court in *King* follows both cases, but holds that since the general employer failed to inform the independent contractor of the contents of the drums and affirmatively misrepresented to the contractor what those contents were, the trial court improperly granted a directed verdict.

[2] In addition, Conkey testified that the car had poison placards on it. Bielek testified that he could not remember whether there were poison placards on the car.